## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| L. CHRIS STEWART,<br><br>Plaintiff,<br><br>v.<br><br>KINGSTON IMPERIAL, LLC, MARVIS JOHNSON AND BOBBY SPEARS, JR.<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**(1) BREACH OF CONTRACT;**<br><br>**(2) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br><br>**(3) RIGHT OF PUBLICITY; UNAUTHORIZED MISAPPROPRIATION OF NAME/LIKENESS**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW Plaintiff L. CHRIS STEWART ("Plaintiff" or "Mr. Stewart"), by and through undersigned counsel, files this Complaint against Defendants KINGSTON IMPERIAL, LLC, MARVIS JOHNSON, and BOBBY SPEARS, JR. (collectively, "Defendants") and alleges as follows:

### NATURE OF THE ACTION

1.     This action arises out of a publishing agreement (hereinafter, the "Agreement") entered into between Kingston Imperial, LLC and Mr. Stewart for an autobiography tentatively titled "*L. Chris Stewart*" (the "Work").

2.     Kingston Imperial is an independent publishing house that publishes fiction and non-fiction books.  The company is distributed by Penguin Random House.

3.     Through Kingston Imperial, the Agreement provided for a ghostwriter, Bobby

1

Spears, to work with Mr. Stewart.

4.      To date, Mr. Spears has not performed satisfactorily as there has been no delivery of any manuscript to Mr. Stewart for his review and approval.

5.      Given Defendants' lack of performance, Mr. Stewart requests to terminate the Agreement.

6.      Additionally, Plaintiff would like all recordings and filming of any interviews of him, or of third parties regarding him, returned.

7.      Overall, Defendants have repeatedly breached the Agreement and Plaintiff has suffered damages in excess of $75,000, exclusive of attorney's fees and costs.

## PARTIES

8.      Plaintiff, L. Chris Stewart, in his individual capacity, resides at 3625 Cumberland Blvd, Atlanta, GA, 30339.

9.      Defendant, Kingston Imperial, LLC, is a limited liability company organized and existing under the laws of Florida with a principal place of business at 6538 Collins Avenue, #410 Miami Beach, Florida, 33141.

10.     Defendant, Marvis Johnson, is a natural person residing in Brooklyn, New York and, upon information and belief, an owner of Kingston Imperial, LLC.

11.     Defendant, Bobby Spears, Jr., is a natural person residing in California, and upon information and belief, a writer for Kingston Imperial, LLC.

## JURISDICTION AND VENUE

12.     The Court has personal jurisdiction over Kingston Imperial, LLC based on its contacts with the State of Florida, including but not limited to Defendant's registration to conduct business in Florida, and its physical location and principal place of business in Florida.

2

13.     The Court has specific jurisdiction over Marvis Johnson based on his contacts with the State of Florida, including but not limited to being the sole owner of Florida-based company, Kingston Imperial, LLC.

14.     The Court has specific jurisdiction over Bobby Spears, Jr. based on his contacts with the State of Florida, including but not limited to writing books published by the Florida-based company, Kingston Imperial, LLC.

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C §1332(a)(1). Chris Stewart is a citizen of Georgia, Marvis Johnson is a citizen of New York, Bobby Spears is a citizen of California, and Kingston Imperial, LLC is a citizen of Florida for purposes of diversity jurisdiction.

16.     Venue is proper in this Court because Defendant Kingston Imperial's principal place of business is in Miami-Dade County, Florida and Defendant's registration to conduct business is in Florida.

## FACTUAL BACKGROUND

17.     On August 11, 2022, the parties entered into the Agreement. ***See* Exhibit A, Publishing Agreement.**

18.     The Agreement provided for a ghostwriter, Bobby Spears (the "Writer"), to be engaged by the publisher to work with Chris Stewart. ***See* Exhibit A, Publishing Agreement ¶8.**

19.     This process, detailed in paragraphs 8 and 10 of the Agreement, included the Writer be engaged by Kingston Imperial interviewing Mr. Stewart, drafting the manuscript, and collaborating with Mr. Stewart to deliver. ***See* Exhibit A, Publishing Agreement ¶¶8 and 10.**

20.     Kingston Imperial sent the Writer on a weeklong trip to Atlanta, Georgia to interview Mr. Stewart, his family, co-workers and friends. The Writer visited from June 19th to 24th, 2023.

21.     Not only did more than 10 hours of interview sessions take place, but hours and hours of recordings were taken by the Writer of not just Mr. Stewart but multiple people who were to serve as background for the Work.

22.     To date, the Writer has not performed satisfactorily as there has been no delivery of any manuscript to Mr. Stewart for his review and approval.

23.     Under the Agreement, within 120 days of the interviews conducted by the Writer engaged by the publisher, Kingston Imperial was responsible for providing a working draft of the manuscript through the Writer, with the author Mr. Stewart delivering any necessary clearances, permissions, consents, and documentation. *See* **Exhibit A, Publishing Agreement ¶10(a).**

> **10. Manuscript Delivery.**
> (a)     Author shall make himself available for, schedule and participate in, no less than ten (10), one hour (1Hr), interviews with Writer, to discuss the subject matter of the Manuscript (the "Information Sessions"), within sixty days of execution of this Agreement.  Upon completion of the Information Sessions, the Writer will have one hundred and twenty days (120 days) to deliver to Publisher the initial draft of the Manuscript (the "Delivery Date") with Author delivering any necessary clearances, permissions, consents and documentation (the "Manuscript Material").  Within thirty days from the date

24.     Moreover, Paragraph 8 of the Agreement provided that Mr. Stewart would be fully involved in the writing process and have final decisions over all creative matters, including matters of artistic taste and judgment. *See* **Exhibit A, Publishing Agreement ¶8**.

> Publisher shall engage and pay the Writer directly. As between Author on the one hand and Writer and/or any other Contributor on the other, Author shall have final decisions over creative matters including matters of artistic taste and judgment. Upon approval of the manuscript and text of the Work, no changes shall be made in the manuscript of the Work by persons other than the Author, except routine copy editing, unless the Author consents to such changes. The only exception is that the Publisher will not be bound to print anything that may

25.     No draft was ever provided to Mr. Stewart for review.

26.     Furthermore, the Agreement provided for an advance of $45,000, payable in installments as follows: $10,000 on signing, $10,000 on delivery of a manuscript by the author,

$10,000 on delivery of a complete manuscript and acceptance by the publisher, and $15,000 upon publication. ***See* Exhibit A, Publishing Agreement ¶4**.

> Publisher shall pay Author a royalty advance of $45,000 (forty-five thousand U.S. dollars) for The Autobiography tentatively titled "***L. Chris Ste***wart***"***. This advance will be split into four payments: $10,000 (ten thousand  dollars) upon signature of this Agreement by all parties; $10,000 (ten thousand dollars) upon Author delivering the  initial draft Manuscript of "***L .Chris Stewart"*** to the Publisher; $10,000 (ten thousand dollars) upon Author delivering the complete Manuscript of "***L .Chris Stewart"*** to the Publisher and Publisher accepting the manuscript; and $15,000 (fifteen thousand dollars) upon publication of "***L. Chris Stewart",*** which shall be no later than twelve months from acceptance of the complete manuscript*.*   These advances will be deducted from future royalties owed to the

27.     However, because Mr. Stewart never received the manuscript or recordings of the interviews, it was impossible for him to fulfill any writing obligation under the Agreement or to finish or finalize the Work and receive payment.

28.     Kingston Imperial's delay has, thus, caused Mr. Stewart harm and made him unable to avail himself of potential other opportunities.

29.     Kingston Imperial has also breached its obligation to Mr. Stewart because the Writer turned several hours of interviews and recordings over to a third party without authority or review by Mr. Stewart.

30.     Without Mr. Stewart's approval, advertisements have been displayed on Amazon, Walmart regarding an anticipated book release date for 2025.

## Amazon's Advertisement



## Walmart's Advertisement



## FIRST CAUSE OF ACTION

### (Breach of Contract)

31.     Mr. Stewart realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 30 above.

32.     As alleged in paragraphs 22 and 23 above, Defendants' failure to provide Mr. Stewart with a copy of the manuscript as delivered by the Writer or any of the interview materials is a fundamental breach of the Agreement and the publisher's obligations.

33.     Mr. Stewart has performed, or attempted to perform, all of his promises under the Agreement, except where performance has been excused or waived.

34.     At all relevant times, Mr. Stewart was ready, willing and able to perform his obligations under the Agreement.

35.     Mr. Stewart has an extensive record to document this including all text messages. *See* **Exhibit B, Text Messages.**

36.     These text messages show not only that Mr. Stewart was available but invited the Writer to trial, and that Mr. Stewart never missed a scheduled Zoom or cancelled a meeting.

37.     Following Mr. Spears' visit, Mr. Stewart did not hear from the Writer for large periods of time despite Mr. Stewart frequently checking in for updates and asking why a draft of the manuscript was taking so long. *See* **Exhibit B, Text Messages**.

38.     Mr. Stewart also did not receive responses from Mr. Spears for up to 4 months. *See* **Exhibit B, Text Messages**.

39.     In early 2024, Mr. Spears indicated that a manuscript was with a third-party finisher, Steven Savile, and would be sent by March, but it never arrived.  *See* **Exhibit B, Text Messages.**

40.     Instead, the Writer indicated that delays of the third-party finisher were due to personal reasons.

41.     The Writer turned all interviews and recordings over to this third party without authority or review by Mr. Stewart.

42.     Mr. Stewart retains ownership of his interview contributions and all associated copyright, which grants specific rights to Kingston while reserving the copyright to Mr. Stewart. *See* **Exhibit A, Publishing Agreement ¶1**.

> 1.**Grant of Rights.** The Author, on behalf of himself and his heirs, executors, administrators, successors, and assigns, exclusively grants, conveys, assigns and transfers to the Publisher and its licensees, successors, and assigns, all right, title and interest in and to the Work, and every element of the Work, as set forth herein, throughout the world, in any and all media and forms of expression, now known or hereafter discovered or developed, as set forth herein for the full term of copyright (and any and all extensions and renewals thereof), including, but not limited to the following exclusive rights:
>> (A) To publish, distribute, sell and exploit the Works in the English language throughout the world, whether in print, verbatim eBook, all digital now known or hereafter discovered or developed (i.e. non-dramatic, unenhanced Internet/online rights, digital download, NFT's, Amazon Kindle, Sony eBook, Barnes & Noble eBook, Apple iPad, etc.), or non-dramatic audio (i.e. audio book) format;
>> (B) this Agreement will be in effect for the full legal term of copyright; and
>> (C) copyright shall remain in Author's name.

43.     Paragraph 2 of the Agreement further reserves all rights not expressly granted to the Publisher to Mr. Stewart. *See* **Exhibit A, Publishing Agreement ¶2**.

44.     Thus, regardless of whether the interviews were conducted by a Writer hired by Kingston, all materials provided by Mr. Stewart remain his property.

45.     As a direct and proximate result of Kingston Imperial's breaches of the Agreement, Mr. Stewart has been damaged in an amount to be determined at trial, but in no event less than $45,000.

## SECOND CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

46.     Plaintiff incorporates by reference all the allegations contained in paragraphs 1 through 45 above.

47.     The Agreement incorporated an implied covenant of good faith and fair dealing, which obligated Kingston Imperial to perform the terms and conditions of the Agreement fairly and in good faith and to refrain from any act or omission that would hinder or prevent Mr. Stewart from receiving benefits under the Agreement, or that would impede or make more costly or burdensome Plaintiff's performance under the Agreement.

8

48.     Upon information and belief, despite its obligations, Defendant knowingly and willfully failed to deliver the manuscript or recordings of the interviews.

49.     Defendants' breach of the implied covenant of good faith and fair dealing resulted in the damages to Mr. Stewart, that arise separate and apart from its breach of contract.

50.     By its actions alleged herein, Kingston Imperial breached this implied covenant.

51.     As a proximate result of Kingston Imperial's breaches, Mr. Stewart has suffered and will continue to suffer damages in an amount to be fully determined at trial.

52.     Mr. Stewart is further informed and believes, and based thereon alleges that Kingston Imperial's breaches were undertaken with malice, oppression and fraud, justifying an award of punitive damages against it.

## THIRD CAUSE OF ACTION
### (Right of Publicity)

53.     Mr. Stewart incorporates by reference all the allegations contained in paragraphs 1 through 52 above.

54.     Without Mr. Stewart's consent, an advertisement was displayed regarding an anticipated book release date for 2025.

55.     Paragraph 11 of the Agreement grants Mr. Stewart approval over the image used for publicity. *See* **Exhibit A, Publishing Agreement ¶11.**

56.     Posting the work on Amazon without his approval, whether industry practice or not, violated his approval rights.

57.     Mr. Stewart is further informed and believes, and based thereon alleges that Kingston Imperial's conduct was undertaken intentionally or grossly negligently, justifying an award of punitive damages against it.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendant as follows:

a.      Termination of the Agreement;

b.      Retrieval of all recordings and filming of any interviews of Plaintiff, or of third

parties regarding Plaintiff;

c.      On all Causes of Action, for damages according to proof, plus accrued interest;

d.      On all Causes of Action, for an award of punitive damages;

e.      On all Causes of Action, for costs of suit and reasonable attorney's fees; and

f.      On all Causes of Action, for such other relief as the Court may deem

just and proper.

Dated:      July 24, 2025.

Lewis Brisbois Bisgaard & Smith LLP
Attorney for Plaintiff
The Alhambra
2 Alhambra Plaza, Suite 1110
Phone:  786-299-5564;
Fax:  786-513-2249

BY:   */s/ Jonathan O. Aihie*
        JONATHAN O. AIHIE
        Florida Bar Number 127080
        jonathan.aihie@lewisbrisbois.com

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for the above-captioned action.


Dated:     July 24, 2025


/s/Jonathan Aihie
JONATHAN AIHIE
Attorney for Plaintiff
L. CHRIS STEWART

11